UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GREEN TREE SERVICING LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>SFR INVESTMENTS POOL 1, LLC, *et al.*,<br><br>                              Defendants. | Case No. 2:15-cv-00476-JCM-VCF<br><br>ORDER |

Presently before the court is defendant SFR Investments Pool 1, LLC ("SFR") motion for summary judgment (ECF No. 68), in which defendant Elkhorn Community Association (the "HOA") joined (ECF No. 72). Plaintiff Ditech Financial, LLC fka Green Tree Servicing LLC ("Ditech") filed a response (ECF No.76), to which SFR replied (ECF No. 80).

Also before the court is Ditech's motion for summary judgment. (ECF No. 69). The HOA (ECF No. 75) and SFR (ECF No. 78) filed responses.

**I.    Facts**

This case involves a dispute over real property located at 7701 Flourish Springs St., Las Vegas, NV 89131 (the "property").

On November 26, 2007, Sharon Cochran purchased the property and borrowed $184,000.00 from Countrywide Bank, FSB, which was secured by a deed of trust recorded December 13, 2007. (ECF No. 44). The deed of trust was assigned to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP ("BANA") via an assignment of deed of trust recorded on October 5, 2011. (ECF No. 44). BANA assigned the deed of trust to plaintiff Ditech via an assignment of deed of trust recorded October 14, 2013. (ECF No. 44). On January 12, 2012, third-party defendant Absolute

Collection Services, LLC ("ACS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,796.31. (ECF No. 44). On April 06, 2012, ACS recorded a notice of default and election to sell to satisfy the delinquent assessment lien. (ECF No. 44). On August 02, 2012, ACS recorded a notice of trustee's sale, stating an amount due of $3,534.75. (ECF No. 44). ACS mailed by certified mail the notice of foreclosure sale to BANA. (ECF No. 68, exh. A-1).

On December 11, 2012, SFR purchased the property at the foreclosure sale for $8,100.00. (ECF No. 44). A trustee's deed upon sale was recorded December 13, 2012. (ECF No. 44).

On March 16, 2015, Ditech filed the original complaint (ECF No. 1), which it amended on June 24, 2015 (ECF No. 30), and then again on December 18, 2015 (ECF No. 44). In its second amended complaint, Ditech alleges five causes of action: (1) declaratory judgment against SFR and the HOA; (2) quiet title against SFR; (3) breach of NRS 116.1113 against the HOA; (4) wrongful foreclosure against the HOA; and (5) injunctive relief against SFR. (ECF No. 44).

On April 17, 2015, SFR filed a counter/crossclaim for quiet title and injunctive relief. (ECF No. 13).

On May 20, 2015, the HOA filed a third-party complaint against ACS, alleging (1) breach of contract, (2) indemnity, and (3) contribution. (ECF No. 21).

In the instant motions, SFR and Ditech both move for summary judgment in their favor. The court will address each as it sees fit.[1]

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[1] As an initial matter, the court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 69, exh. A); notice of delinquent assessment (ECF No. 1-7); notice of default and election to sell (ECF No. 70 at 8–10); notice of trustee's sale (ECF No. 70 at 22–23); trustee's deed upon sale (ECF No. 70 at 75–79); and assignments of deed of trust (ECF No. 69, exhs. E, F). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**II.    Discussion**

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

**A.    Conclusive Recitals**[2]

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–12, when the events giving rise to this litigation occurred.

4

Section 116.3116(1) of the Nevada Revised Statutes gives a homeowners' association a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3] "The 'conclusive' recitals concern default,

---

[3] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests

5

notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc*., 366 P.3d 1105, 1110 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, SFR has provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale. Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id*. at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle SFR to success on its quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title). Thus, the question remains whether Ditech demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

### B. Failure to Tender

---

in the purchaser the title of the unit's owner without equity or right of redemption. Nev. Rev. Stat. § 116.31166(2)–(3).

6

1    Ditech fails to allege that BANA, its predecessor-in-interest, tendered the deficiency
2    amount set forth in the notice of trustee's sale.  In fact, Ditech acknowledges that no tender was
3    made or attempted.  (*See* ECF No. 44 at 6 ("On information and belief, had Ditech or anyone
4    else attempted to tender the amounts due under [the HOA's] claimed lien, [the HOA] and/or its
5    agents would have rejected the attempted tender.")).

6    Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority
7    portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.
8    *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior
9    lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see*
10   *also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142,
11   1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve
12   their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley*
13   *Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079,
14   1083 (Nev. 1980))).

15   Here, Ditech does not assert that any attempt to pay the deficiency amount was made.
16   Pursuant to the notice of trustee's sale, $3,534.75.  Had BANA paid the noticed amount, the
17   HOA's interest would have been subordinate to the first deed of trust.  *See* Nev. Rev. Stat. §
18   116.31166(1); *see also SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can
19   pay the entire lien amount and then sue for a refund).  Rather than paying the noticed amount and
20   preserving their interest, Ditech now seeks to profit from its own failure to follow the rules set
21   forth in the statutes.  *Cf.* Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust
22   only when a subordinate interest has failed to make good the deficiency in performance or
23   payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the
24   deficiency is made good at least 5 days prior to sale).

25   **C.     FHA-Insured Loans**

26   In its motion, Ditech dedicates several pages arguing that the federal foreclosure bar
27   preempts contrary state law so as to render the foreclosure sale invalid.  (ECF No. 69 at 9–24).
28   Ditech, however, fails to explain how this argument is relevant here as no party in the instant

case seeks to quiet title against FHA and FHA is not itself a party.

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program. Specifically, it hinders HUD's ability to recoup funds from insured properties. As this court previously stated in *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS 116.3116 may not extinguish a federally-insured loan. No. 2:13–CV–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015).

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party. Neither the complaint nor the counterclaim seeks to quiet title against FHA. Thus, this argument provides no support for Ditech as the outcome of the instant case has no bearing on FHA's ability to quiet title.

### D. Commercial Reasonability

Ditech contends that the foreclosure sale was commercially unreasonable and the court should grant its motion because the purchase price was grossly inadequate and therefore commercially unreasonable. (ECF No. 69 at 24–28).

SFR argues that the sale price itself was commercially reasonable and that no evidence of fraud, unfairness, or oppression exists that accounted for or brought about a low sales price. (ECF No. 68 at 12).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in

Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *SFR Investments*, 334 P.3d at 410. NRS Chapter 116 includes an obligation of good faith. *See* Nev. Rev. Stat. § 116.1113 ("Every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement."). Furthermore, numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

### 1.     *Inadequate Sale Price & Fraud, Unfairness, or Oppression*

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the

---

[4] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

inadequacy of price" (internal quotation omitted)))).

Despite Ditech's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. (*See* ECF No. 69 at 25). In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).

Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Further, Ditech misstates the restatement approach. In particular, the restatement does not provide that "a grossly inadequate price itself is the proof of unfairness required to set aside a foreclosure sale." (ECF No. 69 at 26). While Ditech provides an accurate quote of comment B in § 8.3 of the restatement, the portion quoted offers no support to Ditech's argument that a grossly inadequate price alone is sufficient to prove unfairness. (*See* ECF No. 69 at 26 ("a foreclosure proceeding that otherwise complies with state law may not be invalidated because of the sale price unless the price is grossly inadequate" (quoting Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b))).

Ditech asserts that SFR purchased the property at the foreclosure sale for less than 8% of its fair market value, but fails to provide any evidence to support its assertion of the property's fair market value. (ECF No. 69 at 27). Ditech argues that regardless, unfairness is satisfied by the HOA's representation in the CC&Rs that its foreclosure would not extinguish the rights of "defeat or render invalid the rights of the beneficiary under any recorded first deed of trust encumbering a unit, made in good faith and for value[.]" (ECF No. 69 at 27) (capitalizations

omitted).

SFR maintains that "not only can SFR show that the sale price itself was commercially reasonable, but there is no evidence of fraud, unfairness or oppression that accounted for or brought about a low sales price." (ECF No. 68 at 12). Citing to *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994) ("*BFP*"), SFR argues that a reasonable value for foreclosed real property is "the price in fact received at the foreclosure sale, so long as all of the requirements of the State's foreclosure law have been complied with." (ECF No. 68 at 13). SFR thus concludes that the sale price of $8,800.00 was commercially reasonable because multiple bidders attended the foreclosure sale, of which SFR was the highest bidder. (ECF No. 68 at 14).

SFR's argument and explanation of *BFP*, however, conveniently ignores the Supreme Court's explicit emphasis in that case:

> We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different.

*BFP*, 511 U.S. at 537 n.3. Further, the analysis and holding in *BFP* is inapplicable here as *BFP* involved interpreting the phrase "reasonably equivalent value" in § 548(a)(2) of the Bankruptcy Code, which is not at issue in the present case. *See id.* at 545.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nonetheless, Ditech's argument stops short of finishing the quote from § 6.20 of the CC&Rs. (ECF No. 69-11). The section goes on to state "except as may be otherwise required in accordance with NRS 116.3116, as amended." (ECF No. 69-11). Further, Ditech merely provides page 22 of the CC&Rs and completely omits the rest. (*See* ECF No. 69-11). Thus, Ditech has failed to set forth sufficient evidence to show inadequate sale price and fraud,

11

1  unfairness, or oppression so as to justify the setting aside of the foreclosure sale.

### 2. *Bona Fide Purchaser Status*

Ditech argues that SFR is not a bona fide purchaser for value. (ECF No. 69 at 28). The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals. Specifically, the issue of BFP status concerns a buyer's knowledge of competing interests, whereas the other concerns a statutory presumption that can be equitably overcome under *Shadow Wood*. *See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 859–60.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his/her interest first. *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

SFR argues that it paid value, $8,100.00, for the property and took without notice of a competing or superior interest in the property at the time of the foreclosure sale. (ECF No. 68 at 15–16). Ditech provides no competent evidence sufficient to raise a genuine dispute as to SFR's status as a bona fide purchaser. Rather, Ditech merely asserts without adequate support that SFR is a professional property purchaser and thus cannot be a bona fide purchaser. (ECF No. 76). Such conclusory allegations without specific facts supported by competent evidence is insufficient to raise a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

In light of the foregoing, the court finds that Ditech is not entitled to summary judgment and has failed to raise a genuine dispute to preclude summary judgment in favor of SFR. Accordingly, the court will grant SFR's motion for summary judgment on its quiet title claim against Ditech and deny Ditech's motion for summary judgment.

### E. Due Process

Last, Ditech contends that the foreclosure statute is unconstitutional because "U.S. Bank" was not provided any notice of the superpriority amount. (ECF No. 69 at 3). Ditech thus maintains that "[b]ecause the HOA's foreclosure sale was conducted pursuant to an unconstitutional statute—both facially and as applied—it is invalid, and summary judgment should be granted in favor of Ditech." (ECF No. 69 at 4). Further, Ditech argues in its response to SFR's motion for summary judgment that "whether Ditech or its predecessor had actual notice of the 'super-priority' lien amount is irrelevant." (ECF No. 76 at 6).

In *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. 832 F.3d 1154, 1157–58 (9th Cir. 2016). The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

To state a procedural due process claim, Ditech must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Ditech has satisfied the first element as a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, Ditech fails on the second prong.

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise

13

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley Court Trust*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right. BANA recorded its assignment deed on October 5, 2011. The HOA trustee recorded a notice of default and election to sell on August 2, 2012, and sent (by certified mailed) copies of the notice to interested parties, including BANA.

As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put Ditech and its predecessor BANA on notice that their interest was subject to pendency of action and offered all of the required information. Thus, Ditech's motion for summary judgment will be denied as to this issue.

### III. Conclusion

Based on the aforementioned, SFR has met its burden of demonstrating that there is no genuine issue of material fact as to its quiet title claim against Ditech and is entitled to judgment as a matter of law. Accordingly, SFR's motion for summary judgment will be granted. SFR is entitled to a declaratory judgment that Ditech's first deed of trust was extinguished pursuant to the properly conducted foreclosure sale, whereat SFR purchased the property for value in the amount of $8,100.00 and neither Ditech (or its predecessor) tendered the noticed amount prior thereto.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motion for summary judgment (ECF No. 68) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that Ditech's motion for summary judgment (ECF No. 69) be, and the same hereby is, DENIED.

DATED THIS 23rd day of February, 2017.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE